# EXPLORATION COMPANY, LIMITED, ET AL. *v.* UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 277.  Argued May 1, 1918.—Decided June 10, 1918.

Statutes of limitation upon suits to set aside fraudulent transactions do not begin to run until discovery of the fraud. *Bailey* v. *Glover*, 21 Wall. 342.

This rule applies to the provision of the Act of March 3, 1891, 26 Stat. 1093, that suits to vacate land patents shall only be brought within six years after the dates of the issuance of the patents.

235 Fed. Rep. 110, affirmed.

THIS suit was brought in the United States District Court for the District of Colorado to cancel nine coal land patents embracing 1120 acres of land in Colorado which, it was charged, had been procured from the United States by fraud.  A further purpose of the suit was to cancel deeds of the same land from various persons to one Philip L. Foster alleged to be in secret trust for the Exploration Company, a foreign corporation, for whose benefit it is alleged the frauds were committed.  Six of the patents were of date of October 16, 1902, and three of date of September 6, 1902.  The suit was brought March 3, 1911, about eight and a half years after the dates of the patents, the bill alleging that the fraud by which the patents were obtained was self-concealing in its nature, was concealed from the Government by the wrongdoers and was not discovered until 1909.  The defendants demurred on the ground that the suit was barred by the statute of limitations, and the demurrer was sustained by the District Court.  190 Fed. Rep. 405.  The Circuit Court of Appeals for the Eighth Circuit reversed this decision, and the

case was sent back to the District Court, 203 Fed. Rep.
387. After trial a decree was rendered against the de-
fendants, the present appellants. 225 Fed. Rep. 854.
This decree was affirmed by the Circuit Court of Appeals,
235 Fed. Rep. 110, and the case comes here.

The District Court found the following facts:

The Exploration Company, defendant herein, is a
corporation of Great Britain, authorized to purchase,
own, and operate mines, and to purchase and own shares
of stock in mines in all parts of the world. It was the
owner of mines and mining lands in different parts of the
world, and also of shares of stock of corporations engaged
in mining in the United States and other countries. In
1901, and for several years thereafter, its representative
in this country was Charles A. Molson, to whom it had
executed a general power of attorney to represent it in all
matters in the United States. The Exploration Company
desired to acquire certain coal lands in the State of Colo-
rado, which were a part of the public domain of the United
States, but was unable to do so because it was a foreign
corporation, and desired more of these coal lands than a
domestic corporation could obtain under the laws of the
United States. It therefore conceived and carried into
effect the following scheme for the purpose of acquiring
them: Mr. Molson employed one Henry Burrell to obtain
title to the lands. Burrell employed other agents, who
were sent to residents of Colorado, legally entitled to ac-
quire public coal lands from the United States, and induced
them to make entry of such lands as were pointed out to
them by the Exploration Company's agents, and which
were supposed to contain valuable veins of coal. A large
number of such entries were made on lands situated in the
counties of Gunnison and Delta, the parties having filed
declaratory statements as required by law. Many of these
lands were abandoned and no patents applied for, but the
filings on the lands herein involved were paid for and

patents therefor secured.   Henry Burrell was a witness in most, if not all, of these entries.   The parties who made the entries were promised the sum of twenty-five dollars for their services in so doing.   Burrell was to pay all fees, as well as the purchase money, with funds furnished by the Exploration Company.   The entrymen and women executed deeds of conveyance for their respective tracts of land and delivered them to Burrell as soon as the final proofs were made and the money paid by the Exploration Company's agent to the respective officers of the land offices within whose jurisdiction the lands were situated. Henry Burrell caused these deeds to be made to Alexander Burrell, his brother, and Alexander Burrell later conveyed the lands to Albert L. Smith, a resident of Montana, the only consideration for the conveyance being that Smith promised to hold them in trust for and to convey them to any person designated by the agent of the Exploration Company.   The agent Charles A. Molson having died, the Exploration Company appointed Philip L. Foster to succeed him as its duly authorized general agent in the United States, and Smith conveyed these lands to Foster, without any other consideration, who holds the legal title in secret trust for the Exploration Company. In 1902 patents to these lands were issued by the United States, but the fact that they were secured by false affidavits, and not for the benefit of the entrymen and women, but for the sole benefit of the Exploration Company, who in reality paid the Government the purchase money, was kept secret, and did not become known to any of the officers of the Government, nor did any facts become known to them which could arouse the suspicion of one reasonably diligent that the patents had been obtained by false affidavits for the sole benefit of the Exploration Company until 1909, more than six years after issuance of the patents, and then it only became known to the officers of the Government by reason of the fact that a

Utah corporation had acquired a great many of the public coal lands in the same manner that these lands were obtained, and this being discovered in 1909, the Secretary of the Interior directed in that year an examination of all coal-land entries made in the States of Utah and Colorado. The facts were for the first time discovered in this investigation. There was nothing in the records, or on file in the General Land Office of the United States or the Department of the Interior, which could possibly have aroused a suspicion that these lands had been obtained for the sole benefit of the Exploration Company until the reports of the special agents of the General Land Office were made in the latter part of 1909. As soon as the facts were ascertained, the Secretary of the Interior transmitted them to the Department of Justice, with the request to institute suits to set aside the patents to the lands, and this suit was accordingly instituted on March 3, 1911, several months less than two years after the discovery of the alleged fraudulent acts.

The District Court found that the defendants did not actively conceal the facts which constitute fraud in this case by enjoining silence on the entrymen and patentees, or by directing them or the agents who acted for the Company to refuse to give any information relating to the entries, if asked by the officers of the Government; but were guilty of a passive concealment. When the investigation was made by the agents of the General Land Office, in 1909, in relation to these entries, the patentees, as well as the Company's agents stated the facts truthfully, but until that time the fact that the entries were all made for the benefit of the Exploration Company, and that the legal title held by the defendant Foster was for the benefit of the Company, was concealed. There were no facts or circumstances within the knowledge of any official of the Government prior to the investigation in 1909 which could arouse even a bare suspicion that the entries were made in

the manner hereinbefore described and for the benefit of the Exploration Company.

*Mr. Henry McAllister, Jr.*, with whom *Mr. George E. Tralles* was on the brief, for appellants:[1]

The history of this act (and the associated Act of 1896) indicates that it was intended to include patents secured through fraud, which might be actively concealed and which naturally would be passively concealed; and the failure of Congress to insert any excepting clause covering cases of concealed or unknown fraud indicates that no such exception was intended.

The statute means what it in plain terms says. Construing it this court has held that the lapse of six years from "the date of the issuance" of the patent, without suit, takes away the right as well as the remedy; even void patents are thereby forever validated; *a fortiori*, patents merely voidable because of fraud can never thereafter be challenged. The only open question is whether the land was public land of the United States subject to sale and conveyance through the land department at the time the patent issued. *United States* v. *Winona R. R. Co.*, 165 U. S. 463, 476; *United States* v. *Chandler-Dunbar Co.*, 209 U. S. 477; *Louisiana* v. *Garfield*, 211 U. S. 70; *Burke* v. *Southern Pacific R. R. Co.*, 234 U. S. 669, 693; *Linn & Lane Timber Co.* v. *United States*, 236 U. S. 574, 578; *Hoglund* v. *Lane*, 44 App. D. C. 310, s. c., 244 U. S. 174, 177.

The principle of *Bailey* v. *Glover*, 21 Wall. 342, and kindred cases, to the effect that, where the statute prescribes a limit after "the cause of action accrues" for the institution of the suit, time does not begin to run until the discovery of the fraud, particularly concealed fraud, is based on the theory that until such discovery the cause of action does not accrue. This court and the lower

[1] Counsel, on both sides, referred to the legislative history of the act under construction and that of March 2, 1896, 29 Stat. 42.

federal courts have so held, and it is evidenced by statutory enactments. The principle does not apply to statutes such as the one now in question. The English cases are predicated upon the fact that Statute 21 James I applied solely to actions at law, and therefore the chancery courts might ingraft exceptions in equity cases. *Bond* v. *Hopkins*, 1 Sch. & Lef. 413, 428, 431; *Hovenden* v. *Lord Annesley*, 2 Sch. & Lef. 607, 630; *Ecclesiastical Commissioners* v. *Northeastern Ry. Co.*, L. R., Ch. Div., vol. 4, 845, 859; *Kane* v. *Bloodgood*, 7 John. Ch. 88, 113. Of course, the statute now before us, by its very terms, affects suits in equity, because none other than an equity proceeding could be invoked for the purpose of annulling a patent. Furthermore, it is exclusively confined to "suits by the United States." The "cause of action does not accrue until the discovery of the fraud," is the principle upon which the federal courts predicate their construction of the ordinary statute of limitations. *Bailey* v. *Glover*, supra; *Hovenden* v. *Lord Annesley*, supra, 634; *Sherwood* v. *Sutton*, 5 Mason, 143; *Carr* v. *Hilton*, 1 Curtis, 230; *Norris* v. *Haggin*, 28 Fed. Rep. 275; *Kirby* v. *Lake Shore R. R. Co.*, 120 U. S. 130, 138; *Goodridge* v. *Union Pacific Ry. Co.*, 35 Fed. Rep. 35, 37; *First Massachusetts Turnpike Corp.* v. *Field*, 3 Massachusetts, 201, 207.

In the light of these decisions, there is no merit in the contention that no distinction can be made between a limitation dating from the accrual of the cause of action and one dating from the issuance of the patent. The view so asserted seems to be that both limitations are identical, as both starting points are the same. This assumption of identity of the initial dates rejects the only ground upon which *Bailey* v. *Glover* and other similar cases can be logically sustained, and indicates that the courts below must have taken those cases as authority for the arbitrary suspension of the operation of an unambiguous statute. While, in technical strictness, both starting

points are probably the same, the fact remains that the courts have not considered them to be the same but have held the "date of the accrual of the cause of action" to be dependent upon when that cause was discovered. This is not illogical and does no violence to the language of the statute involved in *Bailey* v. *Glover*. But it is not logical or fairly possible to say in our case that the date of the discovery of the fraud is the date of the "passage of this act" or the date of the "issuance of such patent."

This same principle is fortified by many statutes, which, adopting it, have provided that in the case of fraud "the cause of action shall not be deemed to have accrued until the discovery thereof."

The preceding discussion demonstrates that the application of the "equitable principle" to statutes such as the one involved in *Bailey* v. *Glover* is not the creation of a judicial exception from the terms of the statute—it is merely by way of judicial interpretation.

The principle does not apply to a statute such as the one in question, where the language is not only explicit but inflexible. *Pickett* v. *McGavick*, Fed. Cas. No. 11126; *In re Brown*, Fed. Cas. No. 1983; *Matter of Herzig*, 15 Abb. New Cases, 179; *Mall & Co.* v. *Ullrich*, 37 Fed. Rep. 653; *Kinder* v. *Scharff*, 231 U. S. 517, 521.

The provision in the statute relative to patents issued before its passage makes it impossible, in such instances, to apply the argument that a statute of limitations may run in certain cases from the discovery of the fraud. The same construction must be given to the entire statute.

Congress was presumptively aware of the rulings that the "cause of action does not accrue until the discovery of the fraud"; and in selecting another and inflexible date from which to measure the period of limitation intended to depart from this principle.

The equitable principles announced in *Bailey* v. *Glover* related solely to statutes affecting private litigants. The

Acts of 1891 and 1896 created self-imposed barriers against suits by the Government only, respecting which the equitable rule now invoked had never been, and cannot be, applied. The statutes neither continued nor repealed any such rule because none had ever existed.

The cause of action was not concealed.

*Mr. Assistant Attorney General Kearful* for the United States:

When the object of a suit is to obtain relief against a fraud, concealment of the cause of action by the wrong-doer suspends the bar of the statute. This is an old and familiar rule of law and equity, as binding on the courts of the jurisdictions in which it prevails as any statute ever enacted by a legislative body. It is applied in mitigation of the strict letter to the limitation statute as if it were written there in the form of an exception to its general language. The reason of the rule is that statutes of limitation are designed to prevent the wrongful assertion of rights after the evidence to repel them has been impaired by lapse of time, and therefore it could never have been intended by any general words of limitation to provide an instrument for the encouragement and promotion of wrong. Counsel assert that the rule has never been applied in courts of law unless the statute under consideration contained an express exception of concealed fraud, and that it has only been applied in courts of equity in the absence of such exception where the statute related solely to actions at law. Hence, it is argued, where the statute contains no such exception, and expressly bars suits in equity, the rule is inadmissible. The correctness of their premise is the vital point of this case. The exact point was carefully examined and determined by this court in *Bailey* v. *Glover*, 21 Wall. 342, which has been cited often since and never questioned. *Gifford* v. *Helms*, 98 U. S. 248, 252; *Upton* v. *McLaughlin*, 105 U. S. 640, 642; *Rosen-*

*thal* v. *Walker,* 111 U. S. 185, 190; *Traer* v. *Clews,* 115 U. S. 528, 537; *Kirby* v. *Lake Shore, etc., Railroad,* 120 U. S. 130, 136; *Avery* v. *Cleary,* 132 U. S. 604, 609; *Pearsall* v. *Smith,* 149 U. S. 231, 236; *Kinder* v. *Scharff,* 231 U. S. 517, 521.

The rule of *Bailey* v. *Glover* has been applied to the statute now under consideration, upon facts similar to those of the case at bar, in *Linn & Lane Timber Co.* v. *United States,* 196 Fed. Rep. 593; 203 Fed. Rep. 394, affirmed on another point, 236 U. S. 574; *United States* v. *Puget Sound Co.,* 215 Fed. Rep. 436; *United States* v. *Southern Pacific Co.,* 225 Fed. Rep. 197; *United States* v. *Booth-Kelly Lumber Co.,* 246 Fed. Rep. 970. See also *State* v. *Stone Cattle Co.,* 66 Texas, 363, where the rule of *Bailey* v. *Glover,* was applied to a similar statute upon a state of facts like the present.

The English cases were examined in *Bailey* v. *Glover.* Previously, in 1828 Mr. Justice Story in the law action of *Sherwood* v. *Sutton,* 5 Mason, 143, had reviewed them exhaustively and demonstrated that in England the exception was allowed in equity both in cases where the limitation act was applicable by analogy merely and in those of concurrent jurisdiction, where the statute bound courts of law and equity alike; and not only in equity but also by the courts of law, without dissent. For a full discussion of the early English and American decisions, leading to the same result, see Angell on Limitations, 6th ed., §§ 183–186, which was written prior to *Bailey* v. *Glover.* See also *Bank* v. *Fairbank,* 49 N. H. 131, 141; *Way* v. *Cutting,* 20 N. H. 187, 190–194; *Bowman* v. *Sanborn,* 18 N. H. 205, 208. The statement of Vice Chancellor Malins in *Ecclesiastical Commissioners* v. *Northeastern Ry. Co.,* L. R., 4 Ch. Div. 845, 859, is true, if at all, only with respect to such equitable claims and titles as were not also cognizable in courts of law. It was not pertinent to the case before him, and was later disapproved by the

Privy Council. *Bulli Coal Mining Co.* v. *Osborne* [1899], A. C. 351, 362.

There is nothing in *Bailey* v. *Glover* to indicate that a period running from the time the cause of action accrued was considered any less definite or more susceptible of interpretation than one running from the date of a designated transaction. On the contrary, the court very plainly regarded the statute as precisely like those dealt with in the cases which it cited. The English statute of 21 James I, c. 16, in the application of which the rule originated, concededly did not employ such language, and "it is to be remembered," as Mr. Justice Story said in *Sherwood* v. *Sutton*, 5 Mason, 143, 153, "that most if not all the statutes of limitations existing [in 1828] in the several States of this Union have borrowed the language of the statute of 21 of James." It was upon the authorities applying the rule to those statutes that the court relied in *Bailey* v. *Glover*. See also *Kirby* v. *Lake Shore Railroad*, 120 U. S. 130; *Greenwald* v. *Appell*, 17 Fed. Rep. 140, 141; *Linn & Lane Timber Co.* v. *United States*, 196 Fed. Rep. 593, 599; *United States* v. *Southern Pacific Co.*, 225 Fed. Rep. 197, 202; *State* v. *Stone Cattle Co.*, 66 Texas, 363; *State* v. *Wichita Land & Cattle Co.*, 73 Texas, 450; *Wichita Land & Cattle Co.* v. *State*, 80 Texas, 684; *Johnston* v. *Roe*, 1 Fed. Rep. 692, 694; *Eddy* v. *Eddy*, 168 Fed. Rep. 590; *Bank* v. *Fairbank*, 49 N. H. 131; *Newberry* v. *Wilkinson*, 199 Fed. Rep. 673, 682–686.

The fact that the rule of *Bailey* v. *Glover* has been very generally adopted by statute in the States, proves only the solid sense and natural justice of the rule. The effect of those statutes is practically to overrule the decisions which were disapproved in *Bailey* v. *Glover* and to make the rule of that case universal in its application. *State* v. *Stone Cattle Co.*, 66 Texas, 363, 367; *Bank* v. *Fairbank*, 49 N. H. 131, 141.

The Act of 1896 concerned only patents "erroneously

issued" under railroad and wagon road grants, and the committee report which accompanied that act shows that the Act of 1891 grew out of the confusion resulting from the administration of railroad grants. But even if it appeared that Congress intended to deal specifically with cases of fraud in the acquisition of coal lands by the use of dummy entrymen, yet, as said in *State* v. *Stone Cattle Co.*, 66 Texas, 363, 367: " It could scarcely have been intended that the fraudulent purchaser should reap a benefit from an aggravation of his offense by the fraudulent conceaiment."

The greater liability of the Government to fraudulent imposition is all the more reason why it should have the benefit of this "universally implied" qualification of the broad language of the statute.

The Government may receive the notice through its proper officer, like a corporation. See *People* v. *Blankenship*, 52 California, 619; *State* v. *Giles*, 52 Indiana, 356; *State* v. *Furlong*, 60 Mississippi, 839; *State* v. *Warner Valley Stock Co.*, 56 Oregon, 283, 304; *State* v. *Wichita Land & Cattle Co.*, 73 Texas, 450.

There were affirmative acts of concealment; but it is enough that the fraud was such as to conceal itself.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court of Appeals found that the evidence fully supported the findings of the trial court. We find no occasion to disturb the findings of fact by two courts. The question presented for our consideration is whether the suit was barred by the statute of limitations under the Act of March 3, 1891, 26 Stat. 1093, which provides:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

As averred in the bill, and found by the courts, the frauds were concealed until after six years had elapsed from the issuance of the patents—"After it was supposed the statute of limitations had barred any action, the participants in the fraud talked very freely, telling the truth when it was thought it would do no harm." It is the contention of the appellants that the statute was intended to bar all actions after six years from the date of the issuance of the patent, that if for six years the Government has failed to discover the fraud, no matter what its diligence in that respect may be, its action against the guilty parties is forever barred and they may hold in security the lands thus obtained by grant from the United States by means of fraud perpetrated in defiance of its laws enacted for the disposition of the public domain. We are unable to agree with this contention. We think the true rule is established in federal jurisprudence by the decision of this court in *Bailey* v. *Glover*, 21 Wall. 342. In that case a question was presented under the Bankruptcy Act of 1867, which provided that no suit at law or in equity should be maintained by or against an assignee in bankruptcy, or by or against any person claiming an adverse interest, touching the property or rights of property of the bankrupt, in any court whatever, unless the same should be brought within two years from the time the cause of action accrued for or against the assignee. The action was brought to set aside a conveyance on the ground of fraud. Among other things it was charged that the bankrupt, his wife, son and father-in-law being defendants in the case, kept secret their fraudulent acts, and endeavored to conceal them from the knowledge both of the assignee and of Winston & Company, a creditor proving a debt, whereby both were prevented from obtaining any sufficient knowledge or information thereof until within the previous two years, and that even up to the time suit was instituted they had not been able to obtain

full and particular information as to the fraudulent disposition made by the bankrupt of a large part of his property. A general demurrer was filed to the bill on the ground that the suit was not brought within two years as required by the statute. It is thus apparent that no attempt was made to prosecute the action within two years from the time the same accrued. It was contended that the statute was imperative, that it made no exceptions, and that the action was consequently barred by limitation. This court, after a full review of decisions English and American, decided that, notwithstanding the positive terms of the statute, it did not begin to run until after the discovery of the fraud. In the course of the opinion Mr. Justice Miller said: "They [statutes of limitation] were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

It will be observed in that statute, as in the one now under consideration, there was no provision that the cause of action should not be deemed to have accrued until the discovery of the fraud. But it was held that for the purpose of such statutes the cause of action did not accrue until the discovery of the fraud; that such was the undisputed doctrine of courts of equity, and that the weight of authority, English and American, applied the same rule to actions at law.

Among other cases cited by Mr. Justice Miller, is the decision of Mr. Justice Story at the Circuit in *Sherwood*

v. *Sutton*, 5 Mason, 143, s. c., 21 Fed. Cas. No. 12,782, p. 1303. That case involved a statute of the State of New Hampshire which provided that actions for fraud and deceit should be brought within six years. It contained no exception as to actions founded on fraud where the same had been concealed during the period of limitation, and the question was whether such exception was implied. The cases were very fully reviewed by Mr. Justice Story, and, in holding that the statute did not begin to run until the discovery of the fraud, he said (p. 1307):

"What then, is the reason, upon which this exception has been established? It is, that every statute is to be expounded reasonably, so as to suppress, and not to extend, the mischiefs, which it was designed to cure. The statute of limitations was mainly intended to suppress fraud, by preventing fraudulent and unjust claims from starting up at great distances of time, when the evidence might no longer be within the reach of the other party, by which they could be repelled. It ought not, then, to be so construed, as to become an instrument to encourage fraud, if it admits of any other reasonable interpretation; and cases of fraud, therefore, form an implied exception, to be acted upon by courts of law and equity, according to the nature of their respective jurisdictions. Such, it seems to me, is the reason, on which the exception is built, and not merely, that there is an equity binding upon the conscience of the party, which the statute does not reach or control."

*Bailey* v. *Glover* has never been overruled nor modified in this court and has been approved and followed. *Rosenthal* v. *Walker*, 111 U. S. 185, 190; *Traer* v. *Clews*, 115 U. S. 528, 537, 538; *Kirby* v. *Lake Shore & Michigan Southern Railroad*, 120 U. S. 130, 136; *Avery* v. *Cleary*, 132 U. S. 604, 609. It was also applied in the Court of Appeals for the Ninth Circuit in the case of *Linn & Lane Timber Co.* v. *United States*, 196 Fed. Rep. 593; 203 Fed. Rep. 394.

It is true that Mr. Justice Brewer, in delivering the opinion of the court in *United States* v. *Winona & St. Peter R. R. Co.*, 165 U. S. 463, 476, said that no matter what the mistake or error of the Land Department was, or what the frauds of the patentee, the patent would become conclusive as a transfer of title after the lapse of six years. But the learned Justice said in the same opinion that this limitation could not be availed of because the suit was commenced before the expiration of the time prescribed, and that it was referred to as showing the purpose of Congress to uphold titles arising under certification or patent after the lapse of a certain time. It therefore appears that the question was not involved in that case. Nor does it contain any discussion of the doctrine previously laid down in *Bailey* v. *Glover, supra.*

In *United States* v. *Chandler-Dunbar Co.*, 209 U. S. 447, cited by appellants, no question was made as to the effect of concealment of fraud until after the running of the statute. The same is true of *Louisiana* v. *Garfield*, 211 U. S. 70, also relied upon by appellants.

When Congress passed the act in question the rule of *Bailey* v. *Glover* was the established doctrine of this court. It was presumably enacted with the ruling of that case in mind. We cannot believe that Congress intended to give immunity to those who for the period named in the statute might be able to conceal their fraudulent action from the knowledge of the agents of the Government. We are aware of no good reason why the rule, now almost universal, that statutes of limitations upon suits to set aside fraudulent transactions shall not begin to run until the discovery of the fraud, should not apply in favor of the Government as well as a private individual. It is not our belief that Congress intended that the Government should be deprived of title to public lands by those who added to the fraud by which they were obtained, artifices which enabled them to conceal the fraudulent manner

in which they were secured until the action was supposed
to be barred by the lapse of six years.

The decree of the Circuit Court of Appeals is

*Affirmed.*

MR. JUSTICE McKENNA and MR. JUSTICE VAN DE-
VANTER dissent.

MR. JUSTICE McREYNOLDS took no part in this deci-
sion.