## UNITED STATES v. WOOLLEY et al.

(District Court, D. Oregon. January 5, 1920.)

No. 6499.

1. PUBLIC LANDS ☞120—EVIDENCE SUFFICIENT TO CANCEL HOMESTEAD PATENTS.
   Evidence regarding the circumstances under which an uncle assisted three nieces to make homestead entries, paying the entry fees, erecting cabins, in which they lived not to exceed two months, and then purchasing the land from them upon final proofs being made, etc., *held* to establish fraudulent entry and proof, authorizing cancellation of patents.

2. PUBLIC LANDS ☞120—EVIDENCE REQUIRED TO CANCEL HOMESTEAD PATENTS FOR FRAUD.
   In suits to set aside homestead patents for deceit and fraud, the government has the burden of establishing the deceit and fraud by clear and convincing proof.

3. PUBLIC LANDS ☞120—EVIDENCE INSUFFICIENT TO ESTABLISH FRAUD IN SECURING HOMESTEAD PATENT.
   Evidence tending to show that a homestead patentee had lived almost continuously upon his homestead, except when working for his brother-in-law, who purchased the claim from him some four months after issuance of final receipt, etc., *held* not to establish fraud or deceit authorizing cancellation of the patent, although various witnesses testified that the patentee had seldom been seen on the homestead.

4. PUBLIC LANDS ☞120—EVIDENCE INSUFFICIENT TO SHOW PURCHASER WITHOUT KNOWLEDGE OF PATENTEE'S FRAUD.
   Evidence regarding the circumstances under which an uncle assisted three nieces in securing homesteads, which he purchased from them upon final proof being made, *held* insufficient to establish that he was an innocent purchaser for value, without notice of their failure to comply with the homestead requirements.

5. LIMITATION OF ACTIONS ☞100(10)—RIGHT OF ACTION TO CANCEL HOMESTEAD PATENT FOR FRAUD ACCRUES ON DISCOVERY OF FRAUD.
   Where the government first learned of fraud practiced in securing homestead entries through a special agent's report dated July 28, 1908, and received in General Land Office August 31, 1908, a suit to cancel the patents, instituted August 22, 1914, was not barred by the six-year statute of limitations.

6. LIMITATION OF ACTIONS ☞104(1)—STATUTE DOES NOT RUN UNTIL DISCOVERY OF CONCEALED FRAUD.
   A fraud concealed, or committed in such a way as to conceal itself, will toll the limitation statute until discovery of the fraud.

In Equity. Suit by United States against Nancy C. Woolley, Eva E. Woolley, Anna L. Traylor, George C. Woolley, and Stephen Harrer. Homestead patents issued to the first three named defendants set aside, and patent to George C. Woolley confirmed in the last-named defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lester W. Humphreys, U. S. Atty., of Portland, Or., Elton Watkins, Asst. U. S. Atty., of Portland, Or., for the United States.

Errett Hicks, of Canyon City, Or., and Davis & Farrell, of Portland, Or., for defendants.

WOLVERTON, District Judge.   This is a suit by the government to set aside certain patents issued to the Woolleys covering lands which they acquired through commuted homestead entries.   The suit is predicated upon fraud which it is alleged the patentees practiced in procuring their patents.   Harrer purchased from the Woolleys, and, it is claimed, with knowledge of and participation in the fraud.

The proofs in the land office show that the Woolleys all made application for their respective homestead entries on August 15, 1900; that Nancy C. established actual residence upon her homestead on July 2, 1901, Eva E. July 23, 1901, and Anna L. (now Mrs. Traylor) July 25, 1901, and that George C. commenced living on his land May 6, 1900, first lived in a tent, and when his house was built established residence thereon November 10th of that year.   George C. filed his commutation affidavit November 1, 1901, and received his final certificate November 6th of that year.   His patent was issued to him August 12, 1902.   He conveyed to Harrer March 13, 1902.   The other three Woolleys applied for commutation September 5, 1902, and received their final certificates September 13, 1902.   Each of them conveyed to Harrer September 30, 1902.   Their patents were issued to them January 28, 1904.

The record herein further shows that George C. Woolley is a brother-in-law of the defendant Stephen J. Harrer, having married Harrer's sister, and that the other defendants Woolley are the daughters of George C., being nieces of Harrer.   Harrer assisted all the parties in locating their lands for making application for homestead, and, as it respects the Woolley daughters, he constructed their houses for them, such as were constructed, upon their respective homesteads, went with them to the land office, and paid their filing fees for them.   George C. Woolley was present at the same time, and made his filing; but it does not appear that Harrer paid the filing fee for him.   When the daughters made their final proofs and commutation, Harrer again accompanied them to the land office, and paid for each of them the commutation price of $200.   The final proof witnesses are the same in all the cases.

The fraud imputed to the defendants Woolley by the bill of complaint is in effect that the testimony and proofs submitted by them for procuring their patents were attended with deceit and misrepresentation, and were false and fraudulent, in that none of them established actual or any residence upon their respective claims, nor maintained residence thereon, but elsewhere, that the houses constructed upon such claims were not at any time abodes fit for habitation, nor did the entryman ever live in them; that none of them acted in good faith in filing upon and making proof of their respective homesteads, and that each of them well knew at the time that the proofs so made were false and fraudulent, and in fact were so made

for the purpose of deceiving the officers of the land department; and that such officers relied thereon and were deceived, and were thus induced to issue the patents in question.

[1] A brief narrative as to what was done respecting these claims will suffice for an understanding of the situation, so as to fix responsibility or not, as the case may be, for fraud practiced by the several homestead claimants.

Woolley, who was a laborer, his wife, and three daughters were residing at Drain early in 1900. Grant Harrer, a brother of Stephen, visited them there, and when he returned to Grant county, in which the land in dispute is situated, Woolley went with him. Later, in March or April, 1900, probably the later date, Mrs. Woolley and the three daughters also went to Grant county, and were met at Heppner by Stephen Harrer, who took them out to his place in that county, which was near the lands in dispute, perhaps four or five miles distant. The family stayed with Stephen Harrer' until he rebuilt a house belonging to him. Thereupon they rented the house from him, and thereafter lived there separate and apart from Stephen. As is shown by the proofs, the daughters, as well as the father, made settlement upon their respective homesteads August 20, 1900. The houses were not built for the daughters, however, until in January, 1901, and they did not, as they say in their proofs, establish actual residence until in July, 1901. The father and the daughters, as we have seen, all located at the same time, and all went to the land office together to make their filings; Stephen Harrer accompanying them. Their houses or cabins were constructed of logs, and those of the daughters were built for them by Harrer; some of them without windows, and all without doors, except openings to admit of ingress and egress; possibly one of them was provided with a hinged door to close the opening. None of them had floors, except as the soil was used for the purpose. These houses are described by some of the witnesses as sheep cabins, such as are used in that country to provide shelter for sheep, and it is claimed by the government that they were in reality cabins or sheds extemporized for temporary habitation for the purpose of simulating residence for the requisite period to obtain patent.

The mother and the daughters returned to Drain in August or early September of 1901. They intended to go back to Grant county that fall, but did not do so. They remained in Drain until the spring of 1902, and the daughters thought that by being away so long they had lost their homesteads. Their uncle Stephen came to Drain, and persuaded them that they had not forfeited their homesteads, and the daughters returned with him to Grant county in March, 1902, where Eva and Nancy remained until after they made final proof September 5th. Anna stayed until June, 1902, when she went back to Drain, and there remained until August. She then returned to Grant county, and lived there until after she made final proof. All of the daughters later in the month of September left Grant county again for Drain. Their uncle Stephen accompanied them to Heppner, where he purchased their claims, paying them $200 each. The

deeds were executed September 30, 1902, and were filed for record in Grant county July 20, 1903.

[2, 3] The daughters made some attempt to live upon the land. They took with them a meager supply of furniture, but none of them occupied their supposed habitat alone. They stayed together, first awhile at one cabin and then at another, thus rotating from cabin to cabin. But, even with this nomadic way of occupation, it is not probable that they resided in their cabins or upon their homesteads more than a month all told, certainly not more than two months at the outside, and it is quite apparent that their final proofs as to actual residence were largely simulated, and not real. While they intended no fraud upon the government, and undoubtedly believed they were actually within the law, yet what they did operated as a fraud upon the law, and they cannot be permitted to hold their homesteads against the claim of the government for the cancellation of their patents. McGoldrick Lumber Co. v. Kinsolving et al., 221 Fed. 819, 137 C. C. A. 377.

The claim of Woolley stands in a different light. He was not called as a witness at the trial. His final proofs, however, show that his wife would not live with him upon the land, but that he lived practically continuously on his homestead up to the time he made such proofs; that he was away for short periods only. The testimony on the trial shows that he worked for Stephen Harrer while away from his cabin. There has been no testimony adequately to dispute this. Several witnesses have testified for the government that they were frequently in the vicinity of these homesteads, including Woolley's, and that they never saw any one occupying the cabins. To this general statement there is perhaps one exception: One of the witnesses, as I remember, did see Woolley or some one at one time at one of the cabins. This testimony is far from satisfactory or convincing. It must be remembered that this is a suit to set aside patents for alleged deceit and fraud, and this puts upon the government the burden of establishing the deceit and fraud by clear and convincing proof; otherwise the solemn act of the government in issuing the patents must stand. The proposition is so elementary as to need the citation of no authorities to support it. In this respect there is no distinction between causes instituted in a strictly private capacity and suits by the government to annul conveyances of title on account of alleged fraud and deception. The sale to Harrer of Woolley's claim, although only a little over four months after the issuance of the final receipt, appears to have been regular, and the filing of the deed for record was less than a month thereafter, and it has not been adequately shown that Woolley and Harrer, or either of them, have been guilty of any concealed fraud respecting this claim.

[4] The defendant Harrer's further defense is that he purchased these homesteads from the patentees in good faith and for valuable consideration, without knowledge of any fraud perpetrated by them in the acquirement of their patents. This can hardly be claimed by him as it respects the daughters, because from his own testimony he was quite as familiar with their transactions as they were themselves,

and was personally cognizant of practically all they did, from the time of making their entries to the time of presenting their final proofs, including what they did in the way of living upon their homesteads, all of which is preclusive of his plea of an innocent purchaser for value.

As it pertains to the George C. Woolley claim, while it may be that Harrer did advance the money at the time that Woolley made his final proof to enable him to pay the price of his commutation, it appears that Woolley was probably indebted to Harrer for advances made to enable him to provide for his family and for other purposes. It is not otherwise shown that Harrer bore the same intimate relation toward Woolley as he did toward the daughters. In reality, 'the daughters and Woolley's wife were in large measure objects of charity with Harrer, and what he did with reference to their homesteads was to relieve them in part from dire necessities thrust upon them.

[5, 6] The next question presented relates to the statute of limitations. The patents were issued, as we have seen, the one to George C. Woolley August 12, 1902, and those to the daughters January 28, 1904. The first information that the government had of any fraud practiced with reference to these homesteads was through Andrew Kennedy, a special agent of the General Land Office, by a report bearing date July 28, 1908. This report was received in the General Land Office August 31, 1908. This suit was instituted August 22, 1914, and has since been pending in court. This was in time by a few days to save the running of the statute of limitations of six years against the government after the discovery of the fraud. A fraud concealed, or committed in such a way as to conceal itself, will toll the statute, and it will not begin to run until after the discovery of such fraud. Exploration Co. v. United States, 247 U. S. 435, 38 Sup. Ct. 571, 62 L. Ed. 1200. The facts here fall within the principle, and the statute did not begin to run until August 31, 1908.

The decree of the court will be that the patents issued to Anna L., Eva E., and Nancy C. Woolley will be set aside and held for naught, but that, as to the George C. Woolley patent, the title will be confirmed in Stephen Harrer, and that neither party to the suit shall recover costs.