**UNITED STATES v. ONE DIAMOND RING (two cases). Claim of HURLOW. Claim of EVANS.**

(District Court W. D. Washington, S. D. December 18, 1924.)

Nos. 4261, 4262.

1. **Customs duties ☞133—Libels against goods fraudulently imported are quasi criminal in nature, and subject to common-law rules of pleading.**

· Libels against property alleged to have been fraudulently imported without payment of customs or duties thereon are quasi criminal in nature, subject to common-law rules of pleading.

2. **Limitation of actions ☞183(5)—Exceptions in statute of limitations, not invoked in support of suit, need not be negatived in answer.**

Where libels against goods alleged to have been fraudulently imported do not invoke exceptions contained in statutes of limitations (Comp. St. Ann. Supp. 1923, § 5841h41), answer pleading such statute need not negative such exceptions.

3. **Limitation of actions ☞190—Exceptions to statutes of limitations relied on may be first pleaded in reply.**

Exceptions contained in statutes of limitations (Comp. St. Ann. Supp. 1923, § 5841h41), relied on in support of libels against goods alleged to have been fraudulently imported, may be first pleaded in reply.

4. **Customs duties ☞130—Forfeiture of goods for fraudulent importation is incurred immediately on such importation.**

Forfeiture of goods fraudulently imported from a contiguous country is incurred immediately on such importation.

5. **Customs duties ☞133—Allegations of answer held sufficient denial of alleged concealment.**

In libels against diamond rings alleged to have been fraudulently imported and thereafter concealed, allegations of answer that claimants had worn rings involved since their receipt, openly, at home and in public, without concealment *held* sufficient denial to allegations of concealment.

6. **Customs duties ☞133—Pleading that fraudulent importation was not discovered till particular date does not toll running of limitations against government; "concealment."**

In libels against goods alleged to have been fraudulently imported and concealed, allegations that such fraudulent entry was not discovered until particular date amount only to allegations that concealment was effective to that date, and does not toll running of limitations, under Comp. St. Ann. Supp. 1923, § 5841h41, until discovery; "concealment" implying some act or intention to secrete.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conceal—Concealment.]

Two libels by the United States against two diamond rings, severally claimed by Marion N. Hurlow and Ethel E. Evans. On exceptions to answers and claims in intervention. Exceptions overruled.

Thos. P. Revelle, U. S. Atty., of Seattle, Wash., and W. W. Mount, Asst. U. S. Atty., of Tacoma, Wash.

Frank C. Neal and L. R. Bonneville, both of Tacoma, Wash., for intervening defendants and claimants.

CUSHMAN, District Judge. These two cases have been heard upon exceptions of the United States to answers and claims in intervention. The information in each case alleges the fraudulent importation in June, 1918, of a diamond ring into this customs district from British Columbia. The exact nature of the fraudulent introduction is not described. It is alleged that the fraudulent entry was not discovered by the customs officers of the United States until July, 1923, and that ever since the importation the same has been concealed from such officers. These suits were begun November 9, 1923. The claim in intervention in each case denies these allegations of the information, and alleges as an affirmative defense that claimants in June, 1918, received through the mail as an engagement present, from the person charged with such importation, the ring in question. In the one case its receipt is alleged to have been in Pennsylvania; in the other case, in Maryland.

No seizure by the customs officers is alleged, in either the information or the claim. The rings were seized by the United States Marshal December 19, 1923. Claimants further allege:

"Immediately upon the receipt of said diamond ring this defendant placed the same upon her finger, and that the same has constantly since said time been worn by her on her hands, and that the same never has been concealed in any manner or form whatsoever, and that she has always worn the same openly and in public ever since about the middle of June, 1918, and has always worn the same both in and around her home, out in public, at social functions, and wherever this defendant had occasion to go. That she never had any occasion to conceal said ring, and that up and until shortly before the said ring was seized by the marshal, as aforesaid, she had no information and never knew that any claim was being made by the government, or that there were any grounds for a claim by the government, that the ring had been illegally imported into the United States."

The marriage of each claimant to the alleged importer is averred, in one case in September, 1918, and the other in June, 1920, and that whatever rights the libelant

may have in said rings are barred by the statute of limitations. In a second affirmative defense the statute of limitations is pleaded as a defense to the suit, without any further attempt to restate the facts of the case. The statute of limitations in effect at the time of the importation provided (section 1713, Comp. Stat.):

"No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs revenue laws of the United States shall be instituted unless such suit or action shall be commenced within three years after the time when such penalty or forfeiture shall have accrued: Provided, that the time of the absence from the United States of the person subject to such penalty or forfeiture, or of any concealment or absence of the property, shall not be reckoned within this period of limitation."

The Tariff Act of September 21, 1922, amended this section, making the period of limitation five instead of three years (section 5841h41, Supp. to Comp. Stat.), but the importation alleged to have been made, as already shown, was more than five years prior to the commencement of these suits. Section 1047 of the Rev. Stat. (section 1712, Comp. Stat.), also providing a five-year period of limitation upon suits for forfeitures and penalties, has no application, as it is a statute of limitation for forfeitures generally, while the statute above quoted is specially applicable to forfeitures under the customs laws.

The United States excepts to both affirmative defenses, upon the ground that they fail to state a defense to the cause of action.

[1] These suits are quasi criminal in their nature, and the rules of pleading are as at common law. Libelant in its libel seeks to avoid the statute by pleading that the fraudulent entry was not discovered until June, 1923. It further seeks to avoid it by pleading the concealment of the rings after their importation. Such anticipation of the defense of the statute of limitations has been questioned. 25 Cyc. 1394a. The answers and claims not only plead facts to show the running of the statute before suit, but expressly negative concealment. The sufficiency of these denials will be presently considered.

[2-5] The libels do not allege absence from the United States of claimants, or of the rings, during the period of limitation. The answers do not negative these exceptions of the proviso of the statute, which is not necessary; the libel not having invoked

them. 25 Cyc. 1410f. If the libelant claims absence from the United States, in either particular, during this period, it is entitled to allege it in a reply. 25 Cyc. 1415d. The fraudulent importation from a contiguous country being alleged in June, 1918, the forfeiture was incurred immediately upon such importation. 134,901 Feet Pine Lumber, Fed. Cas. No. 10,523; United States v. One Dark Bay Horse (D. C.) 130 F. 240. The allegations of the answer and claims are sufficient denials of the allegation of concealment. United States v. One Stradivarius Violin (D. C.) 188 F. 542, affirmed in United States v. One Stradivarius Kieserwetter Violin, 197 F. 157, 116 C. C. A. 594; United States v. One Dark Bay Horse (D. C.) 130 F. 240.

[6] As already pointed out, each libel alleges that the fraudulent entry was not discovered by the customs officers until the month of July, 1923. This can be given no other effect than as showing that the alleged concealment was effective to that date. It adds nothing to the government's rights. United States v. One Dark Bay Horse (D. C.) 130 F. 240, 242. The "concealment" of the statute "implies some active intention on the part of somebody to secrete it." United States v. One Stradivarius Violin (D. C.) 188 F. 542, 544. Knowledge on the part of the claimant of the unlawful importation, it has been held, without concealment, will not bring a case within the exception of the proviso. United States v. One Stradivarius Kieserwetter Violin, 197 F. 157, 159, 116 C. C. A. 594. The word "concealment," in the statute, is associated with the words "absence from the United States." It therefore cannot be held that the mailing of the rings to claimants, without more, itself amounted to concealment, when thereafter there is no concealment for the statutory period. The mailing to a distant state, taken with other facts, might have a bearing on the question of concealment, but alone it is not enough. In so far as the customs laws are concerned, in this particular the United States is indivisible.

These suits do not come within the rule laid down in Exploration Co., Limited, et al., v. United States, 247 U. S. 435, 449, 38 S. Ct. 571, 62 L. Ed. 1200, to the effect that statutes of limitation upon suits to set aside fraudulent transactions do not begin to run until discovery of the fraud. This is true for at least three reasons: First, the statute before the court in that case did not define that which would toll the statute, as does the statute in the present case. In

that case actual concealment by the parties affected for the period of limitation was shown, and the court so found. A further reason appears in this: In that case the court was considering the rule applicable in equity and at law in purely civil causes, causes in which the plaintiff seeks to recover his own. In actions such as the present, in order to punish, as well as recover its due, the United States seeks to forfeit all, even at the expense of the innocent; in such a situation the bar of the statute, and the consequent success of the fraud, if any, is not so abhorrent to natural justice as it is where its effect is to deprive one of what was and is solely his own.

The exceptions are overruled.