Gwendolyn L. KING, for herself and on Behalf of all others similarly situated, Plaintiff-Appellant,

v.

STATE OF CALIFORNIA, George Deukmejian, Governor; March Fong Eu, Sec'y of State; John Van De Camp, Attorney-General; Integrity Home Loan, Inc., Patrick D. McCarron, President of Integrity Home Loan, John M. Plummer, Vice-President of Integrity Home Loan, et al., Defendants-Appellees.

No. 83-6427.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1986.

Decided March 7, 1986.

Gwendolyn L. King, Phoenix, Ariz., for plaintiff-appellant.

Henry Ullerich, James H. Karp, Volk, Newman, Gralla & Karp, Los Angeles, Cal., for defendants-appellees.

Before FARRIS, PREGERSON and NORRIS, Circuit Judges.

FARRIS, Circuit Judge:

Gwendolyn King appeals from the district court's dismissal of her complaint with prejudice. Her action under the Truth-In-Lending Act and the Civil Rights Act alleged that Integrity Home Loan had failed to disclose the identity of the third party lenders who had loaned money to her secured by deeds of trust on her home. She also alleged that the trust deeds were void because the trustee, R & T Financial Servicing Co., Inc., lacked corporate status, and that the power of sale provisions of the California Civil Code are unconstitutional. She further alleged violations of 42 U.S.C. Sections 1981, 1982, 1983, and 1985 and slander of title by Integrity.

King's action against the State of California and its Attorney-General sought declaratory and injunctive relief that would render the actions of R & T null on the ground that R & T's corporate powers were suspended for non-payment of tax.

The district court dismissed on three alternative grounds: King failed to file an opposition to the motions to dismiss; King failed to appear at the hearing on the motions to dismiss; and King's complaint failed to state a claim. King contends that the district court erred by not granting her a continuance to respond to the motions to dismiss and by holding that she failed to state a claim.

I. Statement of the Case

Integrity served as a loan broker on behalf of third party lenders in a series of three loans to Gwendolyn King. Each loan was secured by a deed of trust on King's home: a second trust deed, dated January 1, 1979, secured the first loan; a third trust deed, dated March 27, 1981, secured the second loan; and a third trust deed, dated November 17, 1981 and superseding the March 27, 1981 trust deed, secured the refinancing of the March 27, 1981 obligation. R & T was designated trustee under each trust deed. The identity of the third party lenders was not disclosed.

On December 1, 1981, the corporate franchise of R & T was suspended, pursuant to California Revenue and Taxation Code Section 23301. On June 4, 1982, Integrity recorded a Substitution of Trustee, substituting P.D. McCarron for R & T as the trustee under the trust deed. Integrity thereafter executed a reconveyance deed signed by McCarron, to eliminate the refinanced March 1981 obligation.

King filed a Chapter 7 bankruptcy petition and on July 7, 1983, obtained a discharge of her debts in bankruptcy. Title to King's home remains vested in the bankruptcy trustee.

On May 23, 1983, Integrity disclosed to King the identity of the lenders in each of the disputed transactions. On May 26, 1983, King attempted to rescind under 15 U.S.C. §§ 1635(a) and (b), and 12 C.F.R. Pt. 226. Integrity then sought to foreclose on the security interest in King's home in a trustee's sale set for September 14, 1983. King filed with the State of California a request for quo warranto proceedings under the California Code of Civil Procedure section 803 to prevent the foreclosure sale.

On September 14, 1983, King, on behalf of herself and a class of borrowers who had dealt with Integrity, filed suit in federal court against Integrity, the State, various State officials, and the third party lenders.

In October 1983, both Integrity and the State filed a motion to dismiss King's complaint for failure to state a claim. On October 18, 1983, King filed the first of two ex parte applications to continue the hearing on the motions to dismiss and to extend the time for filing a response to the motions. The court granted King an extension to October 24, 1983 to file her response. King failed to file her response by that date. On November 4, 1983, she filed a second ex parte application for a continuance. On November 7, 1983, the court held a hearing on the motion to dismiss. King did not appear. The court denied King's untimely motion for a continuance and dismissed the complaint with prejudice. King timely appeals.

## II. Discussion

### A. The Motion for Continuance

■ King argues that the district judge abused his discretion by denying her unopposed second ex parte application for a continuance. She argues that although she did not physically appear for the motion, her filed papers constitute an "appearance." She then failed to appear for the scheduled hearing of the motion to dismiss on November 7.

We cannot conclude on this record that the district judge abused his discretion in denying the motion for continuance. For the first of these motions, the judge extended the deadline for filing papers to October 24, 1983. That deadline expired without any action by King. Faced with an ex parte motion not attended by a movant who had failed to file her response even within an extended filing schedule, the district judge denied the motion for further continuance. Under the circumstances, we can find no abuse of discretion.

### B. The Motion to Dismiss

■ Since the district judge had before him neither King as opposing party nor her opposition papers, he was empowered by Local Rules 7.6 and 7.10 to dismiss her complaint on those grounds. Because it is unclear whether the district court dismissed for failure to conform to the local rules or dismissed on the merits, in the interests of justice we review the dismissal of the federal claims as going to the merits. Such review is *de novo*. *See Compton v. Ide*, 732 F.2d 1429, 1432 (9th Cir.1984).

A dismissal for failure to state a claim will be upheld if it appears to a certainty that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). The allegations of a pro se complaint will be construed liberally. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam).

### C. Claims under the Truth-in-Lending Act

King brings two sets of claims under TILA, one for rescission and one for damages for each of the three loans dated June 1979, March 1981, and November 1981.

## 1. Rescission

■ If a lender fails to make the required material disclosures, TILA gives an obligor the right to rescind any credit transaction in which a security interest is created in the obligor's home. 15 U.S.C. Section 1635. King's claim for rescission of the June 1979 loan is barred by the three-year absolute limitation on rescission actions set out in 15 U.S.C. § 1635(f). The three years begin at the "consummation of the transaction or upon the sale of the property, whichever occurs first;" the period applicable to King began in June 1979 and expired in June 1982, more than a year before she filed suit.

■ The loan of March 1981 cannot be rescinded, because there is nothing to rescind. King refinanced that loan in November 1981, and the deed of trust underlying the March 1981 loan has been superseded.

■ As for the November 1981 loan, King's claim for rescission fails, because Congress amended the TILA and Regulation Z, effective April 1, 1981, in such a way as to eliminate her cause of action for material nondisclosure. King contends that failure to disclose all third-party lenders was material nondisclosure. The amended Regulation Z did not include a general disclosure provision, but classified the disclosure requirement according to whether the credit transaction was "open-end" or "closed-end." The transaction here would qualify as closed-end, because it does not fit any of the definitions of an open-end credit transaction. *See* C.F.R. § 226.2(20) (1985). In closed-end transactions when there are multiple creditors, only the creditor making the disclosures need be identified on the disclosure statement. *Id.* § 226.18(a). In addition, the new Regulation Z defines the term "material disclosures" as "the required disclosures of annual percentage rate, the finance charge, the amount financed, the total of payments and the payment schedule." *Id.* § 226.23 n. 48. Under the new regulations, therefore, the identity of each creditor in a multiple creditor transaction is not a "material disclosure." Integrity's November 1981 loan thus did not violate the new Regulation Z, and King cannot rescind.

## 2. Damages

King contends that she can recover damages from Integrity for failing to disclose the identity of the third-party lenders.

Damages are not available for the November 1981 loan for the same reason that rescission is not available. Under the amended regulations, it is not a material nondisclosure for Integrity to fail to disclose the identity of each creditor in this transaction.

The June 1979 and March 1981 loans, however, are subject to the old regulations, under which nondisclosure of the identity of a lender does give rise to civil liability. *Boncyk v. Cavanaugh Motors*, 673 F.2d 256, 260 (9th Cir.1981); 15 U.S.C. § 1640(a). Integrity does not dispute this but contends that King's claims are barred by the one-year statute of limitations set out in 15 U.S.C. § 1640(e).

Section 1640(e) provides that "[a]ny action under this section may be brought within one year from the date of the occurrance of the violation." We have not yet determined when a violation occurs so as to commence the one-year statutory period. *See Katz v. Bank of California*, 640 F.2d 1024, 1025 (9th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 157 (1981). Three theories have been used by other circuits to determine when the statutory period commences: (1) when the credit contract is executed; (2) when the disclosures are actually made (a "continuing violation" theory); (3) when the contract is executed, subject to the doctrines of equitable tolling and fraudulent concealment (limitations period runs from the date on which the borrower discovers or should reasonably have discovered the violation). *See Postow v. OBA Federal S & L Ass'n*, 627 F.2d 1370, 1379 (D.C.Cir.1980) (adopting "continuing violation" theory in some situations); *Wachtel v. West*, 476 F.2d 1062, 1066–67 (6th Cir.), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973) (rejecting

"continuing violation" theory, statutory period commences upon execution of loan contract); *Stevens v. Rock Springs National Bank*, 497 F.2d 307, 310 (10th Cir. 1974) (rejecting "continuing violation" theory); *Jones v. TransOhio Savings Ass'n.*, 747 F.2d 1037, 1043 (6th Cir.1984) (applying equitable tolling and fraudulent concealment).

There are thus at least three ways to interpret Section 1640(e) so as to implement the purposes underlying TILA. Proponents of the "continuing violation" theory criticize a limitations period that runs from the consummation of the transaction because it would relieve lenders of liability even when their nondisclosures or fraud are continuing. Furthermore, lenders could structure the transaction so that borrowers could not discover the nondisclosure until one year from consummation had elapsed. *See Jones v. TransOhio Sav. Ass'n.*, 569 F.Supp. 1188, 1190–91 (N.D. Ohio 1983), *rev'd* 747 F.2d 1037 (6th Cir. 1984). Because borrowers may not discover the TILA violations until more than one year after the execution of the original contract, the "continuing violation" theory argues that it is inconsistent with the remedial and consumer-protection goals of the statute to bar suit when there is no reasonable way for the borrower to discover the wrong within the limitations period. *See Postow*, 627 F.2d at 1380.

On the other hand, those who favor a limitations period running from the execution of the contract contend that the language of § 1640(e), the TILA regulations, and the legislative history evince a congressional intent to terminate liability one year after consummation of the loan contract. *See Stevens*, 497 F.2d at 309. Congress did not intend, so the theory goes, to expose lenders to unpredictable and indefinite liability, stretching the length of a long-term mortgage, for example. This theory is bolstered by several arguments, none of which alone is dispositive but which taken together make a persuasive case against the "continuing violation" theory. First, the one-year limitation applies only to damage actions; rescission is available for three years. *See* 15 U.S.C. § 1635(f). Second, Congress placed a three year absolute limit on rescission actions, demonstrating its willingness to put a limit on some types of TILA actions. Third, the three year bar on rescission actions in Section 1635(f) begins at the "consummation of the transaction or upon the sale of the property, whichever occurs first," so at least in the rescission context, Congress did not intend to prolong the limitations period under a "continuing violation" theory. Last, the very existence of TILA imputes to the borrower knowledge of his rights. The burden then falls on the borrower to bring suit within a year from consummation if he or she suspects any violations.

We reject the "continuing violation" theory as unrealistically open-ended. It exposes the lender to a prolonged and unforeseeable liability that Congress did not intend. *See Harvey v. Housing Development Corp.*, 451 F.Supp. 1198, 1202–3 (W.D.Mo. 1978). Moreover, the *Postow* case, which is the only Court of Appeals case to adopt the "continuing violation" theory, was careful to distinguish its facts from the facts of the cases which reject the "continuing violation" theory. 627 F.2d at 1380 n. 22. In *Postow*, there was a gap between commitment and settlement, with the lender disclosing the required information only at settlement. *Id.* In the instant case, as in *Wachtel* and *Stevens*, the disclosures were not made until after settlement (i.e., consummation). *Postow* is thus not direct authority for applying the "continuing violation" theory to these facts.

On the other hand, an inflexible rule that bars suit one year after consummation is equally inconsistent with legislative intent. Although the Act may impute to borrowers knowledge of their rights as consumers of credit, there may be situations in which a borrower consummates his loan and passes a year without knowing of his lender's fraud or nondisclosures.

We agree with the Sixth Circuit that equitable tolling might be appropriate in certain circumstances. To decide whether

equitable tolling should apply to Section 1640(e), our basic inquiry is whether tolling the statute in certain situations will effectuate the congressional purpose of the Truth-in-Lending Act. *See Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). The Supreme Court has repeatedly applied equitable tolling to statutes of limitations to prevent unjust results or to maintain the integrity of a statute. *See Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349–50, 22 L.Ed. 636 (1874) (Bankruptcy Act of 1867); *Exploration Co. Ltd. v. United States*, 247 U.S. 435, 449–50, 38 S.Ct. 571, 573–74, 62 L.Ed. 1200 (1918) (Act of March 3, 1891, 26 Stat. 1093, to vacate land patents); *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946) (Federal Farm Loan Act); *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 234–35, 79 S.Ct. 760, 762–63, 3 L.Ed.2d 770 (1959) (Federal Employers' Liability Act). *Cf. Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (Title VII time requirement for filing charges with Equal Employment Opportunity Commission).

Section 1601 of TILA sets forth the purpose of the Act:

> (a) The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit....

15 U.S.C. § 1601(a). Thus, Congress through TILA sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–64 nn. 18, 19, 93 S.Ct. 1652, 1657–58 nn. 18, 19, 36 L.Ed.2d 318 (1973) (citing H.R.Rep. No. 1040, 90th Cong., 1st Sess., 13 (1967); S.Rep. No. 392, 90th Cong., 1st Sess. 1–2 (1967) U.S.Cong. & Admin.News 1968, p. 1962). The courts have construed TILA as a remedial statute, interpreting it liberally for the consumer. *Riggs v. Government Employees Financial Corp.*, 623 F.2d 68, 70–71 (9th Cir. 1980). As the Sixth Circuit noted, "[o]nly if Congress clearly manifests its intent to limit the federal court's jurisdiction will it be precluded from addressing allegations of fraudulent concealment which by their very nature, if true, serve to make compliance with the limitation period imposed by Congress an impossibility." *Jones v. TransOhio Savings Ass'n*, 747 F.2d at 1041.

■ For these reasons, we hold that the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

Since fraudulent concealment and equitable tolling involve factual determinations, we remand King's damage claims for the June 1979 loan and the March 1981 loan. The district court should consider such evidence as it deems appropriate to decide whether the claims as to these two transactions are time barred.

### D. Civil Rights and Constitutional Claims

■ King's claims for violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985 and the

Fourteenth Amendment are all similarly flawed: either she fails to allege discrimination at all or her allegations are conclusory and unsupported by any facts. The complaint and its supporting documents establish that there is no set of facts that would entitle her to relief on these claims. *See Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985) (articulating the standard for motions to dismiss). For the elements of civil rights cases, *see Central Building Contractors Ass'n. v. Pennsylvania,* 458 U.S. 375, 388–91, 102 S.Ct. 3141, 3148–50, 73 L.Ed.2d 835 (1982) (Section 1981); *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir.1984) (Section 1983); *Stonecipher v. Bray,* 653 F.2d 398, 401 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982) (Section 1985); *Washington v. Davis,* 426 U.S. 229, 246–48, 96 S.Ct. 2040, 2050–51, 48 L.Ed.2d 597 (1976) (Fourteenth Amendment).

### E. Pendent State Claims

King brings several state claims pendent to her federal claims. She claims slander of title and conspiracy to slander title; she claims that the trust deeds are invalid because the trustee's (R & T) powers were suspended for non-payment of tax; and she claims that a suspended corporation cannot exercise the power of private sale foreclosure. She asks us to order the state to begin quo warranto proceedings against R & T.

The district judge did not make clear the basis for his dismissal of the state claims. Rather than speculate on the grounds for his dismissal, we remand the state claims as pendent to the surviving federal claims. Because the future of the federal claims lies in the district court, it would be pointless for us to review the state claims now. If the federal claims are ultimately disposed of at summary judgment, the district judge would have the discretion to dismiss the pendent state claims. *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985). We intimate no view of the future of any of these claims; it is because their future is not predictable that we remand the state claims along with the federal ones.

### F. Claims against the State and Attorney-General

King's claims against the State and its Attorney-General are vague and without a legal basis. She complains about civil rights violations, but her basis for these claims and the relief she seeks are nebulous at best. Her argument apparently is that the State is not enforcing the suspension of R & T's powers nor is it instituting quo warranto proceedings, thus violating the equal protection clause of the Fourteenth Amendment by not treating R & T as it would treat other corporations.

We affirm the district court's dismissal of the State and the Attorney-General. Conclusory statements unsupported by allegations of unequal treatment that implicates constitutional safeguards do not set forth a claim. We need not resolve our serious doubts about her standing to sue for unequal treatment of R & T, but even if she was so injured by the State's alleged preferential treatment of R & T that she could claim standing, she makes no cognizable equal protection claim. The Attorney-General has broad discretion in granting or denying leave to sue in quo warranto, *City of Campbell v. Mosk,* 197 Cal. App.2d 640, 648, 17 Cal.Rptr. 584, 585 (1961), and King has alleged neither a suspect classification calling for strict scrutiny nor that the Attorney-General's inaction bears no rational relationship to any legitimate governmental purpose. *See Bunyan v. Camacho,* 770 F.2d 773, 774 (9th Cir. 1985).

### III. Conclusion

To summarize, we hold that the district court properly dismissed all the federal claims except the TILA claims relating to civil damages under 15 U.S.C. § 1640 in connection with the June 1979 and March 1981 loans. King's complaint states a claim as to these two loans unless the district court, in applying the rule we set

out for interpreting the statute of limitations in § 1640(e), finds that the claims are barred. We remand the state claims pendent to the surviving federal ones.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Each side shall bear its own costs and fees.