**TRI–CROWN, INC.; John Ventimiglia; WVS Investment Joint Venture; Richard Walker; Lee E. Pittle; Michael Stanley, Plaintiffs–Appellants,**

v.

**AMERICAN FEDERAL SAVINGS & LOAN ASSOCIATION; AmFed Financial Corp.; Centurion Development Corp., Defendants–Appellees.**

No. 89–1124.

United States Court of Appeals, Tenth Circuit.

July 11, 1990.

Patrick J. Canty of Bruce Wright P.C., Colorado Springs, Colo., for plaintiffs-appellants Tri–Crown, Inc. and WVS Inv. Joint Venture.

J. Gregory Walta, Colorado Springs, Colo., for plaintiff-appellant John M. Ventimiglia.

Dan S. Hughes of Trott, Kunstle & Hughes, Colorado Springs, Colo., for plaintiff-appellant Michael F. Stanley.

Richard L. Walker, pro se.

Lee E. Pittle, pro se.

Gregory B. Kanan and Elizabeth T. Wald of Rothgerber, Appel, Powers & Johnson, Denver, Colo., for defendants-appellees American Federal Sav. & Loan Ass'n and Centurion Development Corp.

Bruce N. Warren of Hecox, Tolley, Keene & Beltz, P.C., Colorado Springs, Colo., for defendant-appellee AmFed Financial Corp.

Before ANDERSON, BARRETT and BALDOCK, Circuit Judges.

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiffs-appellants instituted the underlying action against defendants-appellees to recover damages for an alleged violation of the antitying provisions of the Thrift Institutions Restructuring Act (TIRA), 12 U.S.C. § 1464(q)(1). The district court dismissed plaintiffs' case under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

I.

As an initial matter, we must address defendants' contention that we lack jurisdiction over this appeal because plaintiffs' notice of appeal failed to "specify the party or parties taking the appeal" as required by Fed.R.App.P. 3(c).

The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants.... The specificity requirement of Rule 3(c) is met only by some designation that gives fair notice of the specific individual or entity seeking to appeal.

*Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285, 292 (1988). Failure to comply with the specificity requirement constitutes a jurisdictional bar to an appeal. *Id.*

 Plaintiffs' notice of appeal named each plaintiff in the caption and recited in the body of the notice: "Notice is hereby given that the Plaintiffs above-named hereby appeal to the United States Court of Appeals from (sic) the Tenth Circuit from the Order of Dismissal entered in this action on the 12th day of April 1989." The notice also contained separate signature blocks for each plaintiff or his attorney.

Defendants argue that the notice of appeal does not comply with Rule 3(c) because "the litigants are not named in the body of the notice and Appellants' reference to 'Plaintiffs above-named' is ... misleading.... It is a generic reference that does not specify which of the plaintiffs named in the caption are also appellant parties." Memorandum Brief in Support of Dismissal of Appeal at 4. We disagree.

The caption of the notice of appeal named each plaintiff specifically, and the body of the notice incorporated the caption by reference. "[T]he intent to appeal of the part[ies] named in the caption was manifest from a reading of the body of the notice of appeal and the caption." *Mariani–Giron v. Acevedo–Ruiz,* 877 F.2d 1114, 1116 (1st Cir.1989). We agree with the First Circuit that "[t]he caption should be looked at as part of the entire notice." *Id.* In this case, the existence of a signature block for each plaintiff also clearly indicated which parties were appealing. Under the circumstances, we hold that plaintiffs' notice of appeal was sufficient "to provide notice both to the opposition and to the court of the identity of the appellant or appellants." *Torres,* 487 U.S. at 318, 108 S.Ct. at 2409, 101 L.Ed.2d at 292. We therefore have jurisdiction over plaintiffs' appeal.

## II.

 The antitying provisions of the TIRA provide as follows:

(1) An association shall not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain additional credit, property, or service from such an association, or from any service corporation or affiliate of such association, other than a loan, discount, deposit, or trust service;

(B) that the customer provide additional credit, property, or service to such association, or to any service corporation or affiliate of such association, other than those related to and usually provided in connection with a similar loan, discount, deposit, or trust service; and

(C) that the customer shall not obtain some other credit, property, or service from a competitor of such an association, or from a competitor of any service corporation or affiliate of such association, other than a condition or requirement that such association shall reasonably impose in connection with credit transactions to assure the soundness of credit.

12 U.S.C. § 1464(q)(1). An "association" under the TIRA is "a Federal savings and loan association or a Federal savings bank chartered by the [Federal Home Loan Bank] Board under [12 U.S.C.] section 1464." 12 U.S.C. § 1462(d). Although the three subsections of section 1464(q)(1) set forth above are listed in the conjunctive, they are interpreted in the disjunctive, *i.e.,* a complaint need only allege a violation of one of the subsections to state a claim for relief. *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe, Inc.,* 837 F.2d 712, 717 (5th Cir.1988).

Plaintiffs alleged in their complaint the following pertinent facts. In 1985, Tri–Crown, Inc. and WVS Investment Joint Venture (WVS)[1] applied for and received

---

1. Tri–Crown, Inc., is a Colorado corporation. WVS is a Colorado partnership, the partners of which are Mr. Ventimiglia, Mr. Stanley, and Colorado Investment Co., a Colorado partnership, the partners of which are Mr. Pittle and Mr. Walker.

from American Federal Savings and Loan (American Federal) two loans for the acquisition of thirty-eight acres in Colorado Springs, Colorado, for a project known as "Centennial West." Messrs. Ventimiglia, Stanley, Pittle, and Walker personally guaranteed the acquisition loans. Centennial West was to be built in two phases, the first of which was to be the "Shoppette." Plaintiffs built the Shoppette in 1986 using a construction loan from American Federal. The second phase (Phase II) was to be a shopping center, the anchor tenants of which were to be Albertson's Food Store (Albertson's) and Longs Drug Store (Longs).

In November of 1985, Tri–Crown, Albertson's, and Longs signed a joint development agreement which, among other things, obligated Tri–Crown to commence construction of Phase II within ninety days after Longs and Albertson's issued notices to proceed, so long as the notices were issued within three years of execution of the joint development agreement. Plaintiffs alleged that beginning in 1985 and continuing thereafter, American Federal repeatedly assured plaintiffs it would provide the construction financing for Phase II.

In 1987, one or more agents of American Federal began urging Mr. Walker to push Albertson's and Longs to issue the notices to proceed so that construction of Phase II could begin. Mr. Walker advised the agents that he would do so but that American Federal must be prepared to advance construction money shortly thereafter since Tri–Crown was obligated to commence construction within ninety days of the notices to proceed. Mr. Walker also advised the agents that American Federal must be prepared to back the project fully once Albertson's and Longs committed themselves to construction. Plaintiffs alleged that an agent of American Federal repeatedly assured Messrs. Walker and Pittle that American Federal supported the project and would be ready to fund the construction.

In January of 1988, Albertson's indicated it was ready to proceed with construction and wanted to move in by Thanksgiving. In July of 1988, Albertson's and Longs both issued formal notices to proceed. At American Federal's insistence, WVS was restructured in July to make Mr. Ventimiglia the sole managing partner, with whom American Federal could negotiate all loans. Plaintiffs specifically alleged that "[i]n July of 1988, all details of all loans had been negotiated and the parties were ready to extend all loans, except that the amount to be guaranteed by Ventimiglia had not yet been set." Rec. Vol. I, Doc. 1, at 4. Plaintiffs further alleged: "In meetings from July through September, 1988, American Federal repeated that it was prepared to close, if the guarantee of Ventimiglia was signed." *Id.*

Also in July, immediately after Albertson's and Longs issued their notices to proceed, an agent for Centurion, an affiliate of American Federal,[2] approached a partner of Mr. Ventimiglia and proposed that their partnership assume certain non-performing loans held by American Federal. Mr. Ventimiglia and his partners ultimately refused to assume these loans. They conveyed their decision to American Federal on August 27, 1988. Plaintiffs alleged that in retaliation for Mr. Ventimiglia's refusal to assume American Federal's loans, beginning on September 1, 1988, American Federal made additional demands for collateral from plaintiffs which it knew plaintiffs could not meet. Plaintiffs further alleged that "[b]y refusing to advance construction funds to Plaintiffs unless other non-performing loans of American Federal were assumed by Ventimiglia and other of his partners, and knowing Plaintiffs have no other financing available, American Federal is forcing Tri–Crown to default upon the Joint Venture Agreement." *Id.* at 5. Plaintiffs alleged that the foregoing actions of defendants violated the provisions of 12 U.S.C. § 1464(q)(1)(A) and (B).

Defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) on sever-

---

**2.** Both Centurion and American Federal are subsidiaries of AmFed Financial Corporation.

Centurion was organized primarily to hold and deal in real estate.

al grounds, including that plaintiffs had not alleged that defendants extended credit on a requirement or condition that constituted a tying arrangement and an unusual banking practice. Specifically, defendants contended that plaintiffs failed to allege that defendants actually extended them credit, and that the requirement that WVS restructure its partnership was not an unusual banking practice.

The district court granted the motion to dismiss on the ground that since plaintiffs refused to accept the construction loan on the conditions defendants attempted to impose, there was no "extension of credit" as required by the TIRA, so plaintiffs failed to state a claim thereunder. Rec.Vol. I, Doc. 5, at 2.

We review the dismissal of an action for failure to state a claim pursuant to Rule 12(b)(6) *de novo. Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986). We must accept all the factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1148 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

■ To state a claim for relief under 12 U.S.C. § 1464(q)(1)(A) or (B), a plaintiff must allege that an association (1) extended credit (2) on the condition or requirement (3) that its customer obtain or provide some additional credit, property, or service. *See Bruce,* 837 F.2d at 718; *cf. Sharkey v. Security Bank & Trust Co.,* 651 F.Supp. 1231, 1232 (D.Minn.1987) (setting forth same elements as necessary to state claim under antitying provisions of Bank Holding Company Act, 12 U.S.C. § 1972(1)); *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 552 (S.D.N.Y.1985) (same). The primary issue on appeal is whether plaintiffs sufficiently alleged the existence of the first element, an extension of credit.

■ The TIRA does not define what constitutes the extension of credit. The legislative history of the TIRA does not shed much light on the issue but does provide:

> Under Section 331 of the bill, federal thrift institutions are made subject to the anti-tying restrictions generally comparable to those applicable to bank holding companies. *The provision prohibits an association from conditioning the availability* or the terms *of credit,* property or services *on a potential customer's agreement* to:
>
> a. Obtain other credit, property, or services from the association, its service corporation or affiliates;
>
> b. Provide other property, credit, or services to the association, its service corporation or affiliates; or
>
> c. Refrain from obtaining other credit, property or services from a competitor of the association, its service corporation or affiliates.

S.Rep. No. 536, 97th Cong., 2d Sess. 17, *reprinted in* 1982 U.S.Code Cong. & Admin.News 3054, 3071 (emphasis added).

Since the antitying provisions of the TIRA are based on those of the Bank Holding Company Act (BHCA), which apply to banks and single- and multi-bank holding companies, we may look to cases concerning the antitying provisions of the BHCA, as well as that act's legislative history, for guidance. The Senate Report that accompanied the bill that added the antitying provisions to the BHCA, provides as follows:

> During its deliberations, the committee was concerned that there be adequate safeguards against the possibility of misuse of economic power of a bank. . . .
>
> The provision approved by the committee is intended to provide specific statutory assurance that the use of the economic power of a bank will not lead to a lessening of competition or unfair competitive practices. . . .
>
> The language of the bill makes clear that *the availability to a poten'ul customer of any credit,* property, or service of a bank *may not be conditioned upon* that customer's use of any other credit,

property, or service offered by the bank ...; upon the provision by such customer of any other credit, property, or service to the bank ...; or that the potential customer shall not obtain some other credit, property, or service from a competitor of the bank....

S.Rep. No. 1084, 91st Cong., 2d Sess. 16–17, *reprinted in* 1970 U.S.Code Cong. & Admin.News 5519, 5535 (emphasis added). The House Conference Report notes that "[t]he House conferees agreed to this [anti-tying] provision, particularly because of the necessity for protecting small independent businessmen from unfair and predatory business practices by banks, bank holding companies and subsidiaries thereof." H.R. Conf.Rep. No. 1747, 91st Cong., 2d Sess. 29, *reprinted in* 1970 U.S.Code Cong. & Admin.News 5519, 5580.

The court in *Nordic Bank PLC,* noting that the legislative history of the BHCA does not define the term "extension of credit," determined that the term "must be construed to accord with the underlying purpose of the anti-tying provisions. A particular practice should be considered an 'extension of credit' if it manifests the improper economic leverage that the Act seeks to prevent." 619 F.Supp. at 554. *Accord Amerifirst Properties, Inc. v. FDIC,* 880 F.2d 821, 823–24 (5th Cir.1989).

This court has never addressed directly the issue of what constitutes an extension of credit under either the BHCA or the TIRA. In *Clark v. United Bank of Denver National Association,* 480 F.2d 235, 236–37 (10th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973), we were concerned with the propriety of entering summary judgment against the plaintiffs on their antitrust claims under the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 2, and 18. One of the plaintiffs' arguments was that their oral promise, made during negotiations with the bank, that they would maintain an interest-free deposit of $1,500,000 in the bank if the loan were approved, constituted a tying arrangement and a *per se* violation of the Sherman Act. 480 F.2d at 238.

We rejected the plaintiffs' argument on the basis of the legislative history of the BHCA concerning permissible banking practices, and noted in passing that "the complained about tying arrangement never became part of a final agreement. It was only discussed and considered as a part of the negotiating process." *Id.* The district court, below, relied on this language in holding that because plaintiffs refused to accept the construction loan on the conditions American Federal attempted to impose, the tying arrangement never became part of a final agreement and there was no extension of credit.

A further reading of *Clark,* however, shows that it is factually distinguishable from the present case. In discussing the extent of the parties' negotiations, we said:

[I]n the extensive depositions the evidence is entirely lacking to show even that loan negotiations ever reached the point of a formal written application for a loan by appellants. Nor is there any evidence of an oral agreement between the parties concerning even any phase of a loan agreement. In fact, there were only conversations had between appellants and officers of [the appellee] concerning the possibility of a loan.

*Id.*

Plaintiffs' allegations in the present action are more akin to those of the plaintiff in *Bruce v. First Federal Savings and Loan Association of Conroe, Inc., supra,* at 580. The plaintiff in *Bruce* alleged that the defendant made the plaintiff's partnership three secured loans which the plaintiff personally guaranteed. The defendant subsequently extended the maturity dates of two of the loans and, the plaintiff alleged, offered to extend the maturity date of the third loan, originally due on November 20, 1984, if the partnership paid additional interest through the end of 1984. The partnership paid the additional interest by transferring, at the defendant's suggestion, a principal payment originally made on one of the other loans to an interest payment on the subject loan. Nonetheless, in January of 1985, the defendant refused to execute a written loan extension unless

the partnership found a participating lender to fund part of the loan extension. The partnership found a participating lender and so informed the defendant, but the defendant refused to extend the loan or cooperate in its refinancing. 837 F.2d at 713.

The district court dismissed the plaintiff's complaint for failure to state a claim for relief under the TIRA. *Id.* The Fifth Circuit reversed the dismissal as to the plaintiff's claim under 12 U.S.C. § 1464(q)(1)(B), which was based on the allegation that the defendant conditioned the extension of the loan's maturity date on the partnership authorizing the transfer of the principal payment on another loan to an interest payment on the subject loan. 837 F.2d at 717–18.

The appellate court noted that to state a claim under 12 U.S.C. § 1464(q)(1)(B), the plaintiff had to allege that the defendant (1) extended credit (2) on the condition (3) that the plaintiff provide an additional service to the defendant. 837 F.2d at 718. The court held that the plaintiff "satisfie[d] the extension of credit requirement by alleging that [the defendant] *orally agreed* to extend or refinance the loan." *Id.* (emphasis added).

The Fifth Circuit has since commented on its ruling in *Bruce* as follows:

> In *Bruce,* we held that "Bruce [the plaintiff] satisfies the extension of credit requirement by alleging that First Federal orally *agreed* to extend or refinance the loan." Thus, the bank's agreement, regardless of its actual performance concerning the agreement, was enough to satisfy the requirement that the bank "extend credit." We also stated in *Bruce* that "First Federal's *offer* to refinance the loan if a participating lender could be found may constitute an extension of credit." The language in *Bruce* indicates that an *offer* of a tied loan satisfies the term "extension of credit" and is not dependent upon the fate of the actual loan itself.

*Amerifirst Properties, Inc.,* 880 F.2d at 824–25 (citations omitted) (emphasis in original).

Keeping in mind *Nordic Bank PLC'*s suggestion that "[a] particular practice should be considered an 'extension of credit' if it manifests the improper use of economic leverage that the Act seeks to prevent," 619 F.Supp. at 554, and the statements in the legislative history of both the TIRA and the BHCA that the antitying provisions were intended to prohibit the placement of improper conditions on the availability of credit to a potential customer, *see* S.Rep. No. 536, 97th Cong., 2d Sess. 17, *reprinted in* 1982 U.S.Code Cong. & Admin.News 3054, 3071 (TIRA); S.Rep. No. 1084, 91st Cong., 2d Sess. 16–17, *reprinted in* 1970 U.S.Code Cong. & Admin. News 5519, 5535 (BHCA), we conclude that a loan need not actually be consummated in order for there to be an "extension of credit" under the TIRA. As plaintiffs suggested below, it makes little sense to interpret the TIRA in such a fashion as to provide protection only to those customers who actually participate in an improper tying arrangement with a thrift institution by accepting the conditions imposed.

■ Plaintiffs here alleged that American Federal orally agreed to give them a construction loan and that after all but one minor term were agreed upon, the thrift attempted to impose a condition that Mr. Ventimiglia and his partners assume certain nonperforming loans of American Federal. American Federal disputed both below and on appeal plaintiffs' assertion that American Federal orally agreed to give plaintiffs the construction loan. We are concerned only with the sufficiency of plaintiffs' complaint at this stage in the proceedings, however, not the adequacy of their proof. In accordance with their theory, plaintiffs will need to prove that American Federal agreed to make them the loan and that the loan was, in fact, conditioned upon the assumption of other nonperforming loans to unrelated or incidentally related customers, but they have pled sufficient facts demonstrating an "extension of credit" to state a claim for relief. *See, e.g., Swerdloff v. Miami Nat'l Bank,* 584 F.2d 54 (5th Cir.1978) (allegation that bank conditioned any further advancement of funds

under an existing accounts receivable financing agreement upon plaintiffs' transfer of capital stock to another bank customer was sufficient to state a claim for relief under antitying provision of BHCA).

■ American Federal also contends that plaintiffs failed to state a claim for relief because they did not allege sufficient facts to show that the conditions allegedly imposed upon the construction loan constituted an unusual banking practice proscribed by the TIRA. We disagree. In *Palermo v. First National Bank & Trust Co. of Oklahoma City*, 894 F.2d 363, 369 (10th Cir.1990), we discussed permissible and impermissible banking practices under the antitying provisions of the BHCA and stated that "[c]onditioning the extension of credit to a bank customer on the requirement that the customer participate in the bank's bad loans to an unrelated customer surely is an anticompetitive practice proscribed by [12 U.S.C.] § 1972." Such a practice is equally proscribed by the TIRA.

The judgment of the District Court for the District of Colorado is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion. Plaintiffs' motion to include supplemental exhibits in their brief on appeal that were not before the district court is DENIED.