Jose F. Camunas CORDOVA,
et al., Plaintiffs,

v.

BANCO BILBAO VIZCAYA
DE PUERTO RICO, et
al., Defendants.

No. 95–2372 DRD.

United States District Court,
D. Puerto Rico.

Sept. 28, 1999.

Alvaro R. Calderon–Jr., Hato Rey, PR, for plaintiff.

Ruben Colon–Morales, Aviles & Colon Morales, San Juan, PR, for plaintiff.

Manuel Fernandez–Bared, McConnell Valdes, San Juan, PR, for defendant.

Ricardo R. Perez–Pietri, Perez Pietri & Diaz Rios, San Juan, PR, for plaintiff.

Harold D. Vicente–Gonzalez, Vicente & Cuevas, Fernandez Juncos Sta Santurce, PR, for defendant.

**OPINION AND ORDER**

DOMINGUEZ, District Judge.

Pending before the Court is Defendant's, Banco Bilbao Vizcaya de Puerto Rico ("BBV"),[1] Motion For Partial Sum-

---

1. The Court granted a motion by Defendant, PonceBank, formerly known as Ponce Feder-

al Bank, F.S.B., requesting that Banco Bilbao Vizcaya de Puerto Rico ("BBV") be substitut-

mary Judgment (Docket No. 19). Plaintiffs opposed (Docket No. 23). BBV replied (Docket No. 26), supplemented its summary judgment motion (Docket No. 39), requested permission to file exhibits to the supplement in the Spanish language (Docket No. 40), and then tendered the English language translations of the exhibits (Docket No. 42). Plaintiffs did not file a response to BBV's supplement.

The Court notes that the only remaining Plaintiff in this case is Federico Maestre Grau ("Maestre"). Therefore, the Court correspondingly restricts the following analysis to Co–Plaintiff, Maestre.

## I. BACKGROUND

The pertinent undisputed facts of this case are straight forward. While attending medical school for a specialization in ophthalmology, Maestre obtained loans from BBV to finance his studies. Maestre alleges that BBV did not fully disclose all the credit terms of the student loans extended to him and thus violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the "tying arrangements", 12 U.S.C. § 1464(q), under the Thrift Institutions Restructuring Act ("TIRA"). BBV requests dismissal because: (1) Maestre's TILA cause of action is barred by the statutes of limitation; (2) BBV's actions did not violate the TIRA; and (3) the disclosure requirements under the TILA do not apply to four of Maestre's six loans.

## II. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." FED.R.CIV.P. 56(c). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodriguez v.*

ed in the place of PonceBank because Ponce-Bank was merged with and into BBV, thereby PonceBank ceased to exist as a separate entity

*Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997), and " 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir.1997). The court should " 'look at the record ... in the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (quoting *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)) (citations omitted). However, the nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "The court may consider any material that would be admissible or usable at trial." *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed.1998). "But the court should do no more than this in reviewing the quality of the evidence. Most critically, it must never 'weigh the evidence and determine the truth of the matter....' " *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Furthermore, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995) (citations omitted). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

leaving BBV as the surviving corporation. *See* (Docket No. 44).

## III. DISCUSSION

### A. *Maestre's TILA Claim—Statute of Limitations & Exemptions*

■ The applicable statute of limitations under the TILA is one year. *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any court of competent jurisdiction, within one year from the date of the occurrence of the violation."). Maestre acknowledges he took out loans for: (1) $30,390.25 on July 9, 1987; (2) $86,906.23 on July 26, 1988; (3) $121,109.60 on August 4, 1989; (4) $140,-414.73 on September 13, 1990; (5) $168,-316.74 with Mercedes Miró Fuentes on February 13, 1992; and (6) $374,916.00 with Mercedes Miró Fuentes on October 13, 1994. *See* (Docket No. 19, Statement of Uncontested Facts C 1–7; Exhibits 2A, 2B, 2C, 2E, 2F, 2G, and A); (Docket No. 23, Statement of Contested Facts # 16). The limitations clock began to tick when the loans were consummated, that is, the day after the parties became contractually bound. *See e.g., Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641, 646 (8th Cir.1980) (transaction consummated when plaintiff signed the note); *Chevalier v. Baird Sav. Ass'n,* 371 F.Supp. 1282, 1284 (E.D.Pa.1974) (transaction consummated when plaintiffs entered into mortgage agreement). The instant complaint was filed on November 9, 1995. *See* (Docket No. 1). Therefore, this TILA claim is time-barred. *See Basham v. Finance America Corp.,* 583 F.2d 918, 927 (7th Cir.), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1978).

■ Furthermore, nondisclosure is not a continuing violation. *See In re Smith,* 737 F.2d 1549, 1552 (11th Cir.1984); *Katz v. Bank of Cal.,* 640 F.2d 1024, 1025 (9th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 157 (1981); *Goldman v. First Nat. Bank of Chicago,* 532 F.2d 10, 20 (7th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976).

■ The doctrine of equitable tolling is available for tolling of claims against a lender for failure to make material disclosures in credit transactions, in appropriate circumstances, until the borrower discovers or had reasonable opportunity to discover fraud or nondisclosures that form the basis of suit. *See King v. California,* 784 F.2d 910 (9th Cir.), *cert. denied,* 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1986). Given the Note and Statement—Fixed Term Loan documents for all of Maestre's loans, *see* (Docket No. 19, Statement of Uncontested Facts C 1–7; Exhibits 2A, 2B, 2C, 2E, 2F, 2G, and A), and the Responsibilities document, *see* (Docket No. 19, Statement of Uncontested Facts A 1–5; Exhibit 2D), authenticity which is not questioned by Maestre, (Docket No. 23, Statement of Contested Facts # 16), the Court holds that any alleged misrepresentations or nondisclosures either were discovered or could have been discovered through due diligence by Maestre no later than the signing of October 13, 1994 note. As explained in *Diaz v. Antilles Conversion & Export, Inc.,* 62 F.Supp.2d 463 (D.P.R.1999), the party seeking equitable tolling has the burden to plead and prove an exception to the statute of limitations. The First Circuit has a narrow view of equitable tolling. "In a nutshell, equitable tolling is reserved for exceptional cases and the record before [the Court] simply lacks the ingredients necessary to warrant invocation of the doctrine." *Id.* at 470–71 (quoting *Chico–Velez v. Roche Products, Inc.,* 139 F.3d 56, 59 (1st Cir.1998)). Hence, equitable tolling, under the record of the instant case, does not suspend the Maestre's filing deadline and TILA claim is time-barred.

■ In addition, BBV argues that the TILA exempts credit transactions, secured or to be secured by real property "in which the total amount financed exceeds $25,-000." 15 U.S.C. § 1603(3); *see* 12 C.F.R. § 226.3(b); *see e.g., Rhode Island Hosp. Trust Nat'l Bank v. Corey,* 1991 WL 185714, at *1 (D.Mass. Sept.11, 1991) ("The

note in question is exempt from [TILA] provisions, however, as the total amount financed is in excess of $25,000 and is not secured by real property or the defendants' personal dwellings."); *Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683, 687 n. 3, 689 (N.D.Ga.1983) ("Loans over $25,000 ordinarily are exempted from TILA, unless they are secured by an interest in 'real property....' "). All of Maestre's loans were discrete and exceeded $25,000. Only Maestre's final loan was secured by real property. *See* (Docket No. 19, Exhibit 2G). Therefore, the Court holds that all but the final loan is exempt from the TILA provisions. *See* (Docket No. 19, Exhibits 2A, 2B, 2C, 2E, 2F, and A).

### B. *Maestre's TIRA Claim—Failure to State a Claim*

 Maestre's second cause of action alleges the BBV violated the "tying arrangements" as set forth by 12 U.S.C. § 1464(q). In pertinent part, Section 1464(q)(1) provides:

"A savings association may not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain additional credit, property, or service from such savings association, or from any service corporation or affiliate of such association, other than a loan, discount, deposit, or trust service;

(B) that the customer provide additional credit, property, or service to such association, or to any service corporation or affiliate of such association, other than those related to and usually provided in connection with a similar loan, discount, deposit, or trust service; and

(C) that the customer shall not obtain some other credit, property, or service from a competitor of such association, or from a competitor of any service corporation or affiliate of such association, other than a condition or requirement

that such association shall reasonably impose in connection with credit transactions to assure the soundness of credit." 12 U.S.C. § 1464(q)(1). Contrary to Maestre's proposition, when construing Section 1464(q)(1) courts "have generally treated it as equivalent to BHCA's anti-tying provision." *Flags I, Inc. v. Boston Five Cents Sav. Bank,* 831 F.Supp. 928, 934–935 (D.N.H.1993) (citing *Integon Life Ins. Corp. v. Browning,* 989 F.2d 1143, 1150 (11th Cir.1993); *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe,* 837 F.2d 712, 716 (5th Cir.1988); *Tri–Crown, Inc. v. American Fed. Sav. & Loan Ass'n,* 908 F.2d 578, 582 (10th Cir.1990)). The Court believes that "and" in § 1464(q)(1) should be given a disjunctive rather than conjunctive meaning. *See Bruce v. First Fed. Sav. & Loan Ass'n of Conroe,* 837 F.2d 712, 714–717 (5th Cir.1988); *Tri–Crown, Inc. v. American Fed. Sav. & Loan Ass'n,* 908 F.2d 578, 580 (10th Cir.1990). Further, the Court recognizes that "[t]he restrictions on each type of arrangement are described in separate subsections, and each subsection has its own exemption." *Flags I, Inc. v. Boston Five Cents Sav. Bank,* 831 F.Supp. 928, 934 (D.N.H.1993). "[T]he legislative history of § 1464(q)(1) and its predecessor, § 12 U.S.C.1972, demonstrate that the bank anti-tying laws were intended to deter lenders from engaging in anti-competitive practices." *Id.* at 935. With the above in mind, the Court now addresses the subsections (A), (B), and (C).

 "To state a claim for relief under [ ] 12 U.S.C. § 1464(q)(1)(B), the plaintiffs must assert that 'an association (1) extended credit (2) on the condition or requirement (3) that its customer provide some additional credit, property, or service.' " *Viqueira v. First Bank,* 140 F.3d 12, 19 (1st Cir.1998) (quoting *Tri–Crown, Inc. v. American Fed. Sav. & Loan Ass'n,* 908 F.2d 578, 582 (10th Cir.1990)); *see also Bruce v. First Fed. Sav. & Loan Ass'n of Conroe,* 837 F.2d 712, 718 (5th Cir.1988). "To state a claim under this section

[§ 1464(q)(1)(C) ] the extension of credit must be tied to a requirement 'that the customer not obtain some other credit . . . from a competitor.' " *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe*, 837 F.2d 712, 719 (5th Cir.1988) (quoting 12 U.S.C.A. § 1464(q)(1)(C)). Maestre obtained loans from BBV to finance his specialization studies. BBV, Maestre alleges, misrepresented and did not fully disclose all the loans' credit terms. Clearly, the summary judgment record fails to provide sufficient facts upon which to frame a cause of action under Subsections (B) or (C).

 Maestre plead that "Defendants' actions in the implementation and the entering into contract with plaintiffs regarding the student loan program, created by defendants, constitute a violation of the Thrift Institutions Restructuring Act, specifically related to the prohibitions of 'tying arrangements', 12 U.S.C.A., § 1464(q), inasmuch as the only possibility to obtain the promised deferment of the loan until graduation was to obtain new additional credits with defendants, at the prevailing interest for personal loans." Maestre avers that BBV extended credit to him on the undisclosed condition that he obtain additional loans during his years of study in violation of 12 U.S.C.A. § 1464(q)(1). He contends that the BBV had him sign "blank" loan applications prior to the terms being placed into the Note and Statement. BBV then input the credit terms into the application. And that the only way Maestre could effectively defer repayment of the loan was to execute a new loan with BBV.

The Court is unpersuaded. Fatal to Maestre's claim is the devoid of evidence on the record that BBV required or conditioned Maestre to obtain additional credit, property or service for obtaining a loan. BBV has proffered all of Maestre's loan agreements, which Maestre concedes are valid. *See* (Docket No. 19, Statement of Uncontested Facts C 1–7; Exhibits 2A, 2B, 2C, 2E, 2F, 2G, and A); (Docket No. 23, Statement of Contested Facts # 16).

On the face of the Note and Statement, the term of the loans was 12 months. Even though Maestre represents that he signed blank loan documents, he specifically acknowledged receipt of the signed and completed forms. *See e.g.* (Docket No. 42, Exhibit C—Federico Maestre–Grau's Deposition of May 20, 1999 p. 35 and June 8, 1998 p. 41–42, 72). After the loan term had expired, Maestre was not prohibited from paying off the loan—whether from personal funds, a subsequent loan from BBV, or a new loan from a different creditor. Nor was Maestre under any contractual obligation to procure additional credit from BBV. Thus, Maestre's 12 U.S.C.A. § 1464(q)(1)(A) fails.

## IV. CONCLUSION

The Court holds that Plaintiff's, Federico Maestre Grau, TILA claim is time-barred and in the alternative only his last loan is not exempted from the TILA. As for Maestre's TIRA claim, subsections 12 U.S.C.A. § 1464(q)(1)(B) and (C) are not implicated by the facts alleged and violation of subsection (A) is simply untenable upon the face of the summary judgment record.

Wherefore, Defendant's, Banco Bilbao Vizcaya de Puerto Rico, Motion For Partial Summary Judgment (Docket No. 19), is hereby **GRANTED**. Therefore, this case is **DISMISSED** and judgment shall be entered accordingly in favor of the Defendant.

IT IS SO ORDERED.